**MASON–DIXON LINES, INC., Appellant,**

v.

**LOCAL UNION NO. 560, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.**

No. 18702.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1971.

Decided June 1, 1971.

Vincent J. Apruzzese, Apruzzese & McDermott, Springfield, N. J. (Francis A. Mastro, Springfield, N. J., on the brief), for appellant.

Edward A. Cohen, Beckerman, Franzblau & Cohen, Newark, N. J., for appellee.

Before HASTIE, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The appellant, an interstate motor carrier, brought this action in the district court under Sections 301 and 303 of the Labor-Management Relations Act, 29 U.S.C. §§ 185, 187, against a local union, the bargaining agent of its employees, for damages caused by striking and picketing, allegedly in violation of a collective bargaining agreement. The district court stayed the action pending arbitration of issues in suit. This appeal has been taken from that order.

■ There is a threshold question whether the challenged order, obviously not a final order, is an order granting an injunction and as such appealable under section 1292(a) (1) of title 28, United States Code. Without restating the generally accepted analysis that supports our result [1] we hold that the order, staying what at common law would have been an action on the law side, is appealable. Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Com'n, 3d Cir. 1967, 387 F.2d 768; Formigli Corporation v. Alcar Builders, Inc., 3d Cir. 1964, 329 F.2d 79; Hilti, Inc. v. Oldach, 1st Cir. 1968, 392 F.2d 368.

The obligation to arbitrate alleged in this case is founded upon two collective bargaining agreements, an industry-wide National Agreement and a New Jersey-New York Area Supplemental Agreement. The latter explicitly provides in article 44, section 1(j): "[w]here a strike is in violation of this Agreement, or any law including but not limited to violations of Sections 301 or 303 of the National Labor Relations Act, all issues of liability shall be resolved pursuant to the grievance procedure." Section 2 of article 44 of the same agreement declares that "disputes concerning the interpretation, application or enforcement of the grievance procedures provided in this Agreement shall themselves be deemed arbitrable. * * *" Thus, on its face the local Supplemental Agreement makes arbitrable the present dispute concerning the liability of the union under Section 301 or Section 303 of the National Labor Relations Act for an allegedly illegal strike.

■ However, the employer contends that the quoted provisions of the local Supplementary Agreement are nullified by an overriding provision of Article 8(d) of the National Agreement that "[n]othing herein shall prevent legal proceedings by the Employer where the strike is in violation of this Agreement." The words "nothing herein" are sensibly read as meaning "nothing in the National Agreement". Moreover, when the draftsmen of the National Agreement wished to prohibit the inclusion of a provision in any supplemental agreement they did so by explicit reference to supplementary agreements. E. g., Article 8(c). Thus, like the district court, we find no inconsistency between the collective bargaining agreements and the order staying legal action pending arbitration.

It remains to consider the employer's contention that, as a matter of law, the court lacked authority to issue a stay, which in effect requires arbitration, rather than permitting immediate judicial consideration of the merits of the

1. Shanferoke Coal & Supply Corp. v. Westchester Corp., 1935, 293 U.S. 449, 55 S. Ct. 313, 79 L.Ed. 583, approved and distinguished in Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233. See Kirschner v. West Company, 1962, 300 F.2d 133.

employer's claim for damages under Section 301 or 303.

This court had held that "a stay of proceedings pending arbitration * * * is within the inherent power of a [district] court and does not require statutory authority." Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Com'n, 1967, 387 F.2d 768, 773, quoting similar language in Landis v. North American Co., 1936, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153. Certainly, the normal power of a court to do equity enables it to postpone action on a complaint pending the outcome of a procedure for resolving such a dispute upon which the parties have agreed. Yale & Towne Mfg. Co. v. Local Lodge 1717, Machinists, 3d Cir. 1962, 299 F.2d 882. Indeed, our *Yale & Towne* decision approved a stay, pending arbitration, of an action for damages under Section 301 for breach of a no-strike agreement. *Accord,* International Association of Heat and Frost Insulators and Asbestos Workers, Local 66 v. Leona Lee Corp., 5th Cir. 1970, 434 F.2d 192.

To avoid this conclusion the appellant relies upon a limitation stated in the United States Arbitration Act, 9 U.S.C. § 1. Section 3 of that Act requires a district court to grant a stay pending arbitration where the issue involved in a pending suit is "referable to arbitration under an agreement in writing for such arbitration." But Section 1 makes the Arbitration Act inapplicable "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." In our view, the effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the Arbitration Act had never been enacted. So, assuming that the collective bargaining contract in this case is covered by the exclusionary language of Section 3, the question remains whether, without regard to the Arbitration Act, the stay order was within judicial power.

We have already indicated that it was. This conclusion is strongly supported by the decision of the Supreme Court in Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. There the Supreme Court derived from Section 301 of the Labor-Management Relations Act authority to fashion appropriate federal concepts to govern demands for arbitration based upon collective bargaining agreements and, applying such concepts, ordered arbitration. Mr. Justice Frankfurter dissented partly because he viewed Section 3 of the Arbitration Act as disclosing a federal policy against arbitration in such cases. But this argument, which is essentially the appellant's argument here, did not persuade a majority of the Court.

Moreover, since the *Lincoln Mills* case, the Supreme Court has not hesitated to declare that federal policy strongly favors judicial implementation of arbitration for which the parties have provided as a salutary feature of collective bargaining. Thus, in United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, the Court said:

"[T]he run of arbitration cases * * * becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."

The judgment of the district court will be affirmed.