

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-2004

# Palcko v. Airborne Express

Precedential or Non-Precedential: Precedential

Docket No. 03-2227

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Palcko v. Airborne Express" (2004). *2004 Decisions.* Paper 546.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/546

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

———————

No. 03-2227

———————

MARGARET PALCKO

v.

AIRBORNE EXPRESS, INC.,
Appellant

———————

On Appeal from the United States
District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-02990)
District Judge: Hon. Thomas N. O'Neill,
Jr.

———————

Argued January 12, 2004

Before: SLOVITER, RENDELL, and
ALDISERT, Circuit Judges

(Filed: June 18, 2004)

———————

Sharon M. Erwin    (Argued)
Law Offices of Sharon M. Erwin, LLC
Philadelphia, PA 19129

Attorney for Appellant

David L. DaCosta    (Argued)
Joseph J. McAlee
Sprague & Sprague
Philadelphia, PA 19103

Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The principal questions before us on this appeal are the scope of the exclusion from the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2004), for a "class of workers engaged in foreign or interstate commerce" and the preemptive effect, if any, of the statutory exclusion.

**I.**

Defendant Airborne Express, Inc. ("Airborne") appeals from the District Court's order dated April 23, 2003 denying Airborne's motion to compel arbitration of plaintiff Margaret Palcko's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (2004), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-963 (2004). Airborne contends that Palcko is required to arbitrate her claims pursuant to a contractual arbitration agreement based on the FAA and Washington state law. Its appeal challenges the District Court's rulings that Palcko, as a transportation worker engaged in interstate commerce, is excluded from the FAA's coverage, and that this FAA exemption preempts enforcement of Palcko's arbitration

agreement with Airborne under Washington state law.

## II.

Airborne is a package transportation and delivery company that engages in intrastate, interstate, and international shipping. It began employing Palcko as a Field Services Supervisor in Philadelphia in 1998. Palcko's duties included supervising between thirty and thirty-five drivers who delivered packages from Airborne's facility near the Philadelphia International Airport to their ultimate destinations in the Philadelphia area, and picked up packages from customers in the Philadelphia area and brought them back to Airborne's facility for shipment. Palcko monitored and improved the performance of the drivers under her supervision to ensure timely and efficient delivery of packages.

When Palcko was hired, she agreed to enter into a "Mutual Agreement to Arbitrate Claims" with Airborne. The relevant portions of the Agreement, which covers "all claims," provides:

> Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply.

App. at 19.

According to Palcko, once she began performing her duties at Airborne she encountered immediate resistance and hostility from the drivers under her supervision. She alleges that other Airborne employees falsely accused her of sexual misconduct, verbally and physically intimidated her during work, created a hostile work environment through sexist remarks, spread offensive rumors about her sex life and moral character through Airborne's internal communications system, and generally discriminated against her because of her gender. Pl.'s Compl. at 3-7. Palcko contends that Airborne did not meaningfully investigate and address these incidents, which she reported to the company management. According to Palcko, when her immediate supervisor, Michael Matey, told her in the presence of others during a March 5, 2001 meeting that "[m]aybe you don't belong in this industry" and "[m]aybe you should just leave," she left the meeting and never returned to her position at Airborne. Pl.'s Compl. at 7. Airborne denies all Palcko's factual allegations of company wrongdoing. Def.'s Answer at 3-6.

Palcko filed a charge against Airborne with the Equal Employment Opportunity Commission on May 31, 2001, seeking administrative remedies for her allegations under Title VII, 42 U.S.C. § 2000e-5. After 180 days elapsed without a finding by the Commission on Palcko's charge against Airborne, she requested a Dismissal and Notice of Rights from the Commission. 42 U.S.C. § 2000e-5(f)(1).

2

The Commission issued the Dismissal and Notice, thereby exhausting Palcko's administrative remedies and allowing her to seek judicial recourse.

Palcko filed a complaint against Airborne in the District Court for the Eastern District of Pennsylvania on May 20, 2002 under Title VII and the Pennsylvania Human Relations Act. After the parties resolved issues unrelated to this appeal pertaining to the service of process, Airborne filed a motion to compel arbitration of Palcko's claims under the parties' arbitration agreement. The District Court denied Airborne's motion on April 24, 2003, holding that Palcko's employment contract is "excluded from the coverage of the FAA because of the nature of her work." App. at 14, 17-18. The court also found that the exclusionary effect of the FAA preempts alternative enforcement of the arbitration contract under Washington state law, as such enforcement "would directly conflict with Congress's express purpose" of exempting a certain class of workers "from a federal law otherwise favoring arbitration." App. at 18. Airborne now appeals from the District Court's order.

### III.

A.     The Federal Arbitration Act

1.     Jurisdiction

The District Court had subject matter jurisdiction over Palcko's Title VII claim under 28 U.S.C. §§ 1331, 1343. The FAA, 9 U.S.C. § 16(a), provides for appellate jurisdiction over Airborne's appeal from the District Court's order denying its motion to compel arbitration.[1] Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 624-25 (3d Cir. 2003). Palcko contends, however, that because the District Court found Palcko's employment contract to be exempt from the FAA, we have no jurisdiction to review that court's denial of Airborne's motion to compel arbitration under 9 U.S.C. § 16(a), which is a section of the FAA. Appellee's Br. at 1.

_____

[1]     9 U.S.C. § 16(a) states:
(a) An appeal may be taken from–
(1) an order–
(A) refusing a stay of any action under section 3 of this title,
(B) denying a petition under section 4 of this title to order arbitration to proceed,
(C) denying an application under section 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award;
(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
(3) a final decision with respect to an arbitration that is subject to this title.

3

Palcko's contention is without merit. We have held in Sandvik AB v. Advent International Corporation, 220 F.3d 99 (3d Cir. 2000), that the FAA's provision for interlocutory appeals of orders denying motions to compel arbitration clearly endows us with appellate jurisdiction even in instances when the validity of the underlying contract to arbitrate is in doubt, as in Palcko's case with respect to the arbitration agreement's reference to the FAA. See id. at 100 (stating that the FAA's "plain language contemplates interlocutory appeals from orders" denying arbitration because of questions related to the validity of the underlying contract, and that "other parts of the statute evince clear Congressional intent that challenges to refusals to compel arbitration be promptly reviewed by appellate courts").

Acceptance of Palcko's argument would create the curious situation in which either all district courts' orders denying arbitration based on section 1's exemption clause would be beyond appellate review, which contradicts section 16(a)'s plain language, or the determination of our appellate jurisdiction would be contingent on the outcome of our review of the merits of the District Court's finding on the exemption question, which is precisely what we are barred from doing in the absence of appellate jurisdiction. As we stated in Sandvik, "The more natural reading [of Section 16(a) is] to treat all orders declining to compel arbitration as reviewable." Id. at 103. No appellate court has held to the contrary.

Our jurisdiction over the District Court's order here, therefore, is clear.

### 2. Exemption Under Section 1 of the FAA

Section 1 of the FAA provides:

> . . . [N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.

In Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), the Supreme Court considered the scope of this exemption from the FAA. The employer in that case, Circuit City, sought to compel arbitration as provided for in its employment contracts. The Ninth Circuit held that arbitration was not appropriate because section 1 of the FAA exempts from its coverage all employment contracts. The Supreme Court reversed, rejecting the Ninth Circuit's expansive reading of section 1. The Court noted that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.'" Id. at 112 (citing Cole v. Burns Int'l Security Servs., 105 F.3d 1465, 1471 (D.C. Cir. 1997)). Looking to the statutory language, the Court applied the interpretation maxim of ejusdem generis and read the words "any

4

other class of workers engaged in . . . commerce," as giving "effect to the terms 'seamen' and 'railroad employees.'" Circuit City, 532 U.S. at 115. The Court held that the residual phrase "any other class of workers engaged . . . in interstate commerce" should "be controlled and defined by reference to the enumerated categories of workers which are recited just before it . . . ." Id. at 115. Reading section 1 in this narrow manner, the Court noted, also concurs with Congress's intent in enacting the FAA to compel enforcement of arbitration agreements in response to then-prevalent judicial hostility toward such agreements, especially given the fact that more specific and comprehensive federal arbitration procedures for seamen and railroad employees were already in existence or on the verge of passage. See id. at 121 ("It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation.") (citation omitted).

To determine whether Palcko's employment contract, including the arbitration agreement, is exempt from the FAA's coverage, we must therefore determine whether Palcko can be considered to be a "transportation worker" in a "class of workers . . . engaged in . . . commerce" within the meaning of the FAA, as interpreted by Circuit City. The District Court, citing our decision in Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, 207 F.2d 450, 452 (3d Cir. 1953), reasoned that Palcko qualifies as a transportation worker because her job "was so closely related [to the transport of the goods] as to be in practical effect part of [the shipping of the goods]." App. at 17 (internal quotations omitted). Airborne challenges the court's finding, arguing that Palcko, as a "management employee" with no close contact with channels of interstate commerce and not subject to other existing statutory employment dispute resolution schemes, cannot qualify as an exempt worker under section 1 of the FAA. Appellant's Br. at 27-36.

Fifty years ago, this court in Tenney was required to construe the meaning of the exception clause in the context of a labor dispute. The union sought a stay pending arbitration which was provided in the collective bargaining agreement. The parties stipulated that the employer was engaged in the manufacture of goods for sale in interstate commerce and that the employees were engaged in that manufacture and incidental plant maintenance. Presaging the Supreme Court's holding in Circuit City, we held that the exception was inapplicable. We stated that as the language "any other class of workers engaged in foreign or interstate commerce" followed seamen and railroad workers, the rule of ejusdem generis demands that the phrase includes "only those other classes of workers who are likewise engaged directly in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in

5

work so closely related thereto as to be in practical effect part of it." Tenney, 207 F.2d at 452. The Supreme Court's later decision in Circuit City essentially affirmed the Tenney analysis. 532 U.S. at 119.

Adopting the narrow interpretation of section 1 stated in Tenney and Circuit City, Airborne argues that Palcko's work, as a supervisor, was not only dissimilar to that of seamen or railroad workers, but also did not directly involve the interstate delivery of packages. She therefore cannot be a "transportation worker" in the sense envisioned by the Court in Circuit City. We do not agree. According to Palcko's affidavit, she was responsible for "monitoring and improving the performance of drivers under my supervision to insure [sic] timely and efficient delivery of packages." App. at 67. Such direct supervision of package shipments makes Palcko's work "so closely related [to interstate and foreign commerce] as to be in practical effect part of it." Tenney, 207 F.2d at 452; see generally Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 226-27 (3d Cir. 1997) (declaring that Tenney is still good law).

Airborne suggests that the exemption clause should be limited to those truck drivers who physically move the packages. If we were to accept that limitation, we would unnecessarily narrow the section 1 exemption in a way never intended by the FAA; had Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly.[2] We therefore concur with the District Court's finding that Palcko's employment contract with Airborne is exempt from the FAA's coverage because she is a transportation worker engaged in interstate and foreign commerce under section 1 of that statute.

B.   The FAA's Preemptive Effect over Washington State Law Governing Arbitration

1.   Jurisdiction

Airborne also argues that even if its arbitration agreement with Palcko is exempt from the FAA's coverage, the

---

[2]   We are not persuaded by Airborne's suggestion that the inclusion of Palcko in the class of workers exempt from the FAA's coverage would create a "slippery slope" problem that would ultimately lead to the exemption of all "management employees" in the same chain of command. Palcko was a direct supervisor of Airborne's drivers that transported packages, and our decision is based only on her particular relations to the channels of interstate commerce. In this regard Palcko's situation differs from the employee litigants in Cole, 105 F.3d at 1469, and Kropfelder v. Snap-On Tools Corp., 859 F. Supp. 952 (D. Md. 1994); neither the railroad security guard in Cole nor the warehouse manager in Kropfelder was a transportation worker, let alone engaged in the transportation of goods interstate.

6

agreement is nonetheless enforceable under the alternative ground that the arbitration agreement is valid under Washington state law. Before we examine the merit of Airborne's argument, however, we must first ascertain whether there is a basis for our jurisdiction to inquire into this state-law claim.

The District Court exercised supplemental jurisdiction over Palcko's Pennsylvania state law cause of action under 28 U.S.C. § 1367, and issued an order denying Airborne's motion to compel arbitration on both FAA and Washington state law grounds. While we may review Airborne's appeal with respect to the FAA under 9 U.S.C. § 16(a), that section does not cover our review of a non-FAA, state-law arbitration claim in an otherwise nonappealable interlocutory order. Our ability to review the Washington state law issue before us, if any, must therefore rest on the doctrine of pendent appellate jurisdiction, which is discretionary and narrow in nature.

In E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187 (3d Cir. 2001), we explained that "[t]he doctrine of pendent appellate jurisdiction, in its broadest formulation, allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction." Id. at 202-03. Recognizing that the Supreme Court has endorsed, but also limited, the use of

pendent appellate jurisdiction by Courts of Appeals, we concluded that "the doctrine should be used 'sparingly,' and only where there is sufficient overlap in the facts relevant to both the appealable and nonappealable issues to warrant plenary review." Id. at 203 (emphasis in original).

Here, both the FAA exemption and Washington state law issues arise from a single arbitration agreement that provides alternative grounds for the arbitration of all claims arising from Palcko's employment with Airborne. Moreover, both Palcko's Title VII and Pennsylvania Human Relations Act claims arise from the same set of facts related to her conditions as an Airborne employee. Thus, not only does sufficient overlap of facts exist to warrant plenary review, but the Washington state law arbitration issue is so closely intertwined with the FAA claim that our taking of pendent appellate jurisdiction over the former is necessary to ensure meaningful review of the District Court's order in its entirety. We therefore conclude we may exercise pendent appellate jurisdiction over the state-law portion of the District Court's order.

2.    Discussion

The District Court ruled that the exemption of Palcko's employment contract from the FAA's coverage also precludes enforcement of the arbitration agreement under Washington state law. The court found that "[a]lthough the FAA contains no express preemptive provision and its preemptive effect is limited, its preemptive effect does encompass

questions of arbitrability." App. at 17. It reasoned that enforcement of the arbitration agreement between Palcko and Airborne "in accordance with state laws favoring arbitration would directly conflict with Congress's express purpose," in drafting the exemption clause in section 1 of the FAA, of exempting workers engaged in interstate commerce from arbitration. App. at 18.

In considering whether the inclusion of the exemption clause was intended to preempt state law regarding enforcement of arbitration agreements, we must keep in mind that Congress enacted the FAA "to ensure judicial enforcement of privately made agreements to arbitrate," rather than restrict the force of arbitration agreements. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). The Supreme Court has stated that "passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and [courts] must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation." Id. at 220 (footnote omitted). In seeking to fulfill the FAA's purpose, the Court has enforced an agreement to arbitrate claims under the Securities Act of 1933, even though prior case law stated that the Securities Act's language prohibits the arbitration of such claims. Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989) (overruling Wilko v. Swan, 346 U.S. 427 (1953)); see

also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (enforcing arbitration clause in a securities registration application to cover an Age Discrimination in Employment Act claim). In doing so, the Supreme Court has held that the FAA represents a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Court has also stated that parties to an arbitration agreement, "[h]aving made the bargain to arbitrate . . . should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

There is no language in the FAA that explicitly preempts the enforcement of state arbitration statutes. As the Supreme Court explained in Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468 (1989), "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Id. at 477 (citing Bernhardt v. Polygraphic Co., 350 U.S. 198 (1956), which upheld application of state arbitration law to an arbitration provision in a contract not covered by the FAA). The Volt Court, in determining whether to enforce an arbitration agreement using a California procedural rule that has no counterpart in the FAA, stated that "[t]here is no federal policy favoring arbitration under a certain set of

procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Id. at 476. The Court then ruled that the application of the California procedural rule to stay arbitration to the agreement, in accordance with a choice-of-law provision contained therein, is appropriate because while "state law may nonetheless be pre-empted [by the FAA] to the extent that it actually conflicts with federal law – that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the application of the state procedural rule, "in accordance with the terms of the arbitration agreement itself, would [not] undermine the goals and policies of the FAA." Id. at 477-78 (internal quotations and citations omitted).

Applying the Supreme Court's precedent, we conclude that the District Court erred in holding that Palcko's exemption status under section 1 of the FAA preempts the enforcement of the arbitration agreement under Washington state law. It is telling that the arbitration agreement itself envisioned the possibility that Palcko's employment contract would be deemed exempt from the FAA's coverage under section 1 of the Act. It provided for that contingency by including the following: "To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply." App. at 19. We see no reason to release the parties from their own agreement. We stated in

Mason-Dixon Lines, Inc. v. Local Union No. 560, 443 F.2d 807 (3d Cir. 1971), "In our view, the effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the [Federal] Arbitration Act had never been enacted." Id. at 809.[3] Here, enforcement of the arbitration agreement between Palcko and Airborne under Washington state law, as if the FAA "had never been enacted," does not contradict any of the language of the FAA, but in contrast furthers the general policy goals of the FAA favoring arbitration. We will therefore remand so that the District Court can take the actions necessary to enforce the arbitration agreement under Washington state law.

C.    Whether Airborne Waived Its Right to Arbitration

Palcko also argues on appeal that Airborne has waived its right to arbitration

_____

[3]    Although Mason-Dixon Lines involved the different issue of staying judicial proceedings pending arbitration under an agreement excluded from section 1 of the FAA, the principle we put forth in that case regarding the exclusionary effect of section 1 on other arbitration issues not related to the FAA is equally applicable here. The case also demonstrates that enforcing the arbitration agreement under Washington state law does not contradict our finding above that Palcko's employment contract, of which the arbitration agreement is a part, is exempted from the FAA's coverage.

by failing to include it in its initial motion to dismiss on the ground of alleged defective service of process under Federal Rule of Civil Procedure 12(b). Palcko's argument is unpersuasive. Rule 12 deals with defenses and objections by pleading or motion. The relevant portions of Rule 12, for Palcko's purposes, are as follows:

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. . . .

(g) Consolidation of Defenses in Motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

(h) Waiver or Preservation of Certain Defenses.

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

10

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

Fed. R. Civ. P. 12(b), (g), (h).

Palcko contends that although motions to dismiss based on the existence of an arbitration agreement are most commonly filed under Rule 12(b)(1) (lack of subject matter jurisdiction) or Rule 12(b)(6) (failure to state a claim upon which relief can be granted), that practice is inappropriate and that motions to dismiss based on an arbitration agreement are more appropriately brought under Rule 12(b)(2) (lack of personal jurisdiction) or Rule 12(b)(3) (improper venue).[4] Appellee's Br. at 14. Palcko's novel categorization of the arbitration agreement claim is critical to her waiver argument because motions under Rule 12(b)(1) and (b)(6) are not waived under Rule 12(h)(1), but motions under Rule 12(b)(2) and (b)(3) are.

Existing legal authorities do not support Palcko's creative theory. The only support Palcko has cited is a Pennsylvania state court decision interpreting Pennsylvania state rules of civil procedure. Wilk v. Ravin, 46 Pa. D. & C. 4th 347 (Ct. Com. Pl. Allegheny County 1991); Appellant's Reply Br. at 13. Wilk is of little relevance to interpretation of federal procedural rules. Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted. See Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, see, e.g., Aetna Casualty & Surety Co. v. Hameen, 758 F. Supp. 1049 (E.D. Pa. 1990), . . . .").

Allowing a waiver of the right to arbitration based on Rule 12(h)(1) would undermine the strong judicial posture favoring arbitration as discussed above. Our precedent holds that waiver of arbitration rights "is not to be lightly inferred" by federal courts. PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995) (quoting Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975)). We have also stated that "prejudice is the touchstone for determining whether the right to arbitrate has been waived." Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992); see also Thyssen, Inc. v.

---

[4] Improper venue claims fall within Rule 12(b)(3); Palcko incorrectly cited Rule 12(b)(4).

Calypso Shipping Corp., 310 F.3d 102 (2d Cir. 2002) (ruling that no waiver exists even though defendant did not seek arbitration until more than eighteen months after the suit was filed and after plaintiff filed a motion for partial summary judgment).

Although we found prejudice in Hoxworth because defendants had engaged in extensive pretrial practice (including filing a motion to dismiss for failure to state a claim) in the more than eleven months prior to filing a motion to compel arbitration, Hoxworth, 980 F.2d at 925, nothing in the record suggests that Palcko has suffered a similar adverse effect here. Airborne filed its motion to compel arbitration within thirty-eight days of learning of the lawsuit and within roughly twenty-two days of filing its initial motion to dismiss for insufficiency of service of process. Appellant's Reply Br. at 12 n.2. Airborne had also requested that Palcko voluntarily agree to arbitration ten days before filing its motion to compel arbitration. Appellant's Reply Br. at 14. Although the length of the time period involved alone is not determinative, Palcko has failed to show what adverse effects, if any, she has suffered within that short period of time. Therefore waiver cannot be inferred from the facts of this case.

## IV.

For the above reasons, we will reverse the order of the District Court denying enforcement of the arbitration agreement under Washington state law and remand for further proceedings consistent with this opinion.

12