**C. Lamont SMITH, Plaintiff,**

v.

**IMG WORLDWIDE, INC; and Thomas J. Condon, Defendants.**

**Civil Action No. 03–4887.**

United States District Court, E.D. Pennsylvania.

March 9, 2005.

George W. Croner, Kohn, Swift & Graf, P.C., Philadelphia, PA, for Plaintiff.

Samuel J. Pace, Dugan, Brinkmann, Maginnis and Pace, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

DUBOIS, District Judge.

## I. BACKGROUND

On June 19, 2003, plaintiff, C. Lamont Smith, filed this action against Thomas J. Condon and Condon's employer, IMG Worldwide, Inc. ("IMG") in the Court of Common Pleas of Philadelphia. The Complaint was based on claims of defamation and intentional interference with prospective contractual relations. Defendants removed the case to this Court on August 26,

2003 based on diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Presently before the Court is the combined Motion to Compel Arbitration filed by defendant Condon and Motion to Stay filed by IMG. The Court concludes that although plaintiff's allegations are arbitrable under the arbitration agreement in the National Football League Players Association Regulations Governing Contract Advisors ("NFLPA Regulations" or "Regulations"), Condon has waived his right to arbitration by failing to timely initiate a request for arbitration and actively litigating for sixteen months, resulting in prejudice to plaintiff.

## II. FACTS

Plaintiff and Condon are professional sports agents. Both individuals are certified as Contract Advisors by the National Football League Players Association ("NFLPA"), which serves as the exclusive bargaining agent for NFL players. In 1993, NFL club owners and players reached a collective bargaining agreement which dictates that only certified Contract Advisors may serve as agents to players negotiating contracts with NFL clubs. In 1994, the NFLPA adopted the Regulations which contain arbitration provisions applicable to certain disputes between Contract Advisors. In order to qualify for certification, Contract Advisors must complete and sign an "Application for Certification" which states that they agree to be bound by the NFLPA Regulations.

Plaintiff alleges that in or about December 2000, he and Condon were competing for a contract to represent Kenyatta Walker, a highly-touted college football player and prospective professional, prior to the NFL draft in April 2001. According to plaintiff, Condon, in order to dissuade Walker from hiring plaintiff, stated in his presence that plaintiff alienated the general managers of NFL clubs by "playing the race card" during contract negotiations. Moreover, plaintiff alleges that defendant subsequently made similar statements in the presence of another athlete, Antonio Bryant, and his representative; the father of a third athlete, Larry Johnson, Jr.; and other potential clients.

Plaintiff's Complaint asserts claims for defamation and intentional interference with prospective contractual relations against defendant Condon. He also asserts these claims against defendant's employer, IMG Worldwide, Inc., under the doctrine of respondeat superior. Defendant Condon filed the instant Motion to Compel Arbitration on October 25, 2004. In the sixteen months since plaintiff filed this action and before the filing of that Motion, both parties have engaged in motion practice and extensive discovery. During that period, Condon did not request arbitration.

Condon, in his Motion to Compel Arbitration, argues that plaintiff's allegations fall within the scope of two arbitration provisions in the NFLPA Regulations, §§ 5(A)(4) & (5). Further, Condon asserts that he waited sixteen months to move to compel arbitration because he only became aware that plaintiff's allegations fell within the arbitration provisions after plaintiff's deposition on September 22, 2004. Because plaintiff's claims against defendant IMG are based solely upon vicarious liability, IMG moves for a stay of proceedings pending arbitration.

Plaintiff, in his Opposition to Defendant Condon's Motion to Compel Arbitration,[1] argues, first, that his allegations are not

---

1. The Court notes that although plaintiff entitled his submission, "Opposition to Defendant Condon's Motion to Compel Arbitration," it also responds to defendant IMG's Motion to Stay.

arbitrable under the NFLPA Regulations. Second, he asserts that, even if his claims fall within the scope of the arbitration provisions, defendant has waived his right to arbitration by actively litigating this case for sixteen months without requesting arbitration, and by, *inter alia*, engaging in motion practice, participating in extensive discovery, and assenting to Court orders. Lastly, plaintiff argues that he has been prejudiced by defendant's conduct, in part because the discovery completed in this case would not have been available in any arbitration proceeding held pursuant to the NFLPA Regulations. The Court will address these issues in turn.

## III. DISCUSSION

### A. The NFLPA Provisions Covering Arbitration

#### 1. Applicable Law

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA sets forth "a framework for the development of a body of uniform federal law governing contracts within its scope ... [which] applies in questions regarding the construction and enforcement of an arbitration clause, even in those cases in which the district court's jurisdiction is based on diversity of citizenship." *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 54 (3d Cir.2001). Section Two of the Act provides that arbitration agreements in contracts "evidencing a transaction involving commerce" are enforceable.[2] Moreover, § 4 requires courts to enforce an applicable arbitration agreement upon motion by one of the parties where the other party has failed, neglected or refused to arbitrate.[3] Finally, § 3 of the Act states that a court should stay its proceedings if it concludes that the underlying claims are arbitrable.[4]

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,"

**2.** 9 U.S.C. § 2 states, "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

**3.** 9 U.S.C. § 4 provides, in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

**4.** 9 U.S.C. § 3 states, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

including "an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, "[a]n order to arbitrate 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Medtronic*, 247 F.3d at 55 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). However, "while interpretive disputes should be resolved in favor of arbitrability, 'a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.'" *Id.* (quoting *Paine-Webber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990)). The Third Circuit holds that, "[t]o determine whether a claim falls within the scope of an arbitration agreement, the focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic*, 247 F.3d at 55.

### 2. Discussion

■ Defendant argues that plaintiff's claims fall within the scope of both § 5(A)(4) and (5) of the NFLPA's Regulations. Section 5 of the NFLPA Regulations is entitled Arbitration Procedures and provides, in relevant part:

[§ 5]A. Disputes

This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following:

\* \* \* \* \* \*

(4) Any other activities of a Contract Advisor within the scope of these Regulations; and/or

(5) A dispute between two or more Contract Advisors with respect to whether or not a Contract Advisor interfered with the contractual relationship of Contract Advisor and player in violation of Section 3(B)(21) [which, in relevant part, bars a Contract Advisor from "Initiating any communication, directly or indirectly, with a player who has entered into a Standard Representation Agreement with another Contract Advisor ... if the communication concerns a matter relating to the: (i) Player's current Contract Advisor; (ii) Player's current Standard Representation Agreement; (iii) Player's contract status with any NFL Club(s); or (iv) Services to be provided by prospective Contract Advisor either through a Standard Representation Agreement or otherwise."].

Focusing on the "factual underpinnings of the claim," the Court concludes that § 5(A)(4) applies to this case. *Medtronic*, 247 F.3d at 55. The "other activities of a Contract Advisor" prohibited under § 5(A)(4) include "[p]roviding false and/or misleading information to any player or prospective player in the context of recruiting a player as a client." § 3(B)(4). Plaintiff's claim that Condon defamed him and interfered with prospective contractual relations is based on allegations that defendant falsely and maliciously told perspective clients that he "plays the race card" when negotiating with NFL general managers. This alleged conduct clearly qualifies as "providing false and/or misleading information" to players in the context of recruitment and is therefore arbitrable under 5(A)(4).

■ The Court concludes that this case does not fall within the scope of § 5(A)(5), because that provision and the related § 3(B)(21) only apply to interference with existing contractual relationships, and not prospective ones. Although § 3(B)(21) prohibits a prospective Contract Advisor from communicating with a player regard-

ing "[s]ervices to be provided," it limits this prohibition to "a player who has entered into a Standard Representation Agreement with another Contract Advisor." Because plaintiff does not allege that defendant made the statements at issue to any athletes with whom plaintiff had a contract, as required under §§ 3(B)(21) and 5(A)(5), these provisions do not apply to this case. *Medtronic*, 247 F.3d at 55.

## B. Waiver

### 1. Applicable Law

The Third Circuit has held that "[a]lthough waiver is not favored," a party can waive its right to arbitration where it proceeds with its federal action without moving to compel arbitration in a manner which causes prejudice to the other party. *Hoxworth v. Blinder, Robinson & Co., Inc.* 980 F.2d 912, 925 (3d Cir.1992) ("[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived."). *See also Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004). In determining whether the moving party has caused sufficient prejudice to warrant waiver, the Third Circuit in *Hoxworth* held that:

> A determination of prejudice ... incorporates not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery.

*Hoxworth*, 980 F.2d at 926–27.

In *Hoxworth*, the court held that defendants waived their right to arbitration where defendants requested arbitration eleven months after the plaintiffs initiated their action; participated in pretrial proceedings; filed a motion to dismiss and motion to disqualify plaintiffs' counsel; took the deposition of the named plaintiffs (which would not have been permitted in arbitration); answered discovery requests and opposed plaintiffs' motions to compel discovery; moved for a stay of discovery; consented to the court's pretrial order consolidating three class actions; and filed a motion in opposition to class certification. *Id.* at 925–26. Plaintiffs argued that they were prejudiced by defendants' failure to request arbitration promptly in two respects—plaintiffs "devoted substantial amounts of time, effort, and money in prosecuting the action, while defendants were able to use the Federal Rules to conduct discovery not available in the arbitration forum." *Id.* at 926. The Third Circuit agreed with plaintiffs, stating that, based on the "ample record of prejudice," defendants waived any right they had to arbitrate. *Id.* at 927. *See also Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F.Supp. 834, 835–36 (E.D.Pa.1996) (holding that defendants waived arbitration where they waited seven months to move for arbitration, engaged in "extensive discovery," filed a motion to dismiss, assented to pretrial orders, caused plaintiff to incur $100,000 in attorney's fees, and gave no prior notice of their intention to seek arbitration).

In contrast, courts in the Third Circuit have granted a party's motion to compel arbitration where that party's delay in moving was brief and/or where the parties had not engaged in discovery or motion practice. *See Palcko v. Airborne Express*, 372 F.3d 588, 598 (3d Cir.2004) (holding that defendant did not waive arbitration right where defendant moved for arbitration within 38-days of learning of lawsuit,

and within 22–days of moving for dismissal for insufficiency of service of process); *Bellevue Drug Co. v. Advance PCS*, 333 F.Supp.2d 318, 325–26 (E.D.Pa.2004) (Robreno, J.) (holding that defendant did not waive the right to arbitration by waiting ten months before moving to compel arbitration, where the parties had engaged in no formal discovery, a pretrial conference was not held and no scheduling order was issued although a motion to dismiss was "aggressively litigated").

## 2. Discussion

█ In this case, defendant moved to compel arbitration over sixteen months after plaintiff filed his Complaint in state court. In that time defendant has actively litigated the action before this Court as follows:

— removing the action to this Court on August 26, 2003;

— filing a Motion to Dismiss or Transfer this action following removal (denied by the Court by Order dated October 24, 2003);

— filing an "Answer and Affirmative Defenses" on November 14, 2003, and an Amended Answer on March 11, 2004;

— serving initial disclosures under Federal Rule of Civil Procedure 26(a)(1);

— participating in a pretrial conference on March 2, 2004;

— complying with the Scheduling Order of March 2, 2004;

— serving interrogatories and document requests on plaintiff, and responding to plaintiff's interrogatories and discovery requests;

— noticing the depositions of six witnesses and deposing three, including plaintiff;

— issuing subpoenas for documents on June 24, 2004 from a company owned by plaintiff and serving supplemental discovery requests on September 24, 2004;

— entering into a stipulation with plaintiff for an amended scheduling order on December 17, 2004;

— complying with the Amended Scheduling Order dated December 17, 2005; and

— serving the report of defendant's expert witness on October 19, 2004, six days before filing the instant Motion to Compel.

Additionally, litigation counsel for plaintiff, George W. Croner, states in a Declaration (Pl.Opp., Ex. D) that plaintiff incurred over $8,000 in litigation-related costs associated with this case.

Defendant's conduct in this case more closely resembles that of the defendants in *Hoxworth* than the conduct in the cases in which courts found no waiver. Like the defendants in *Hoxworth*, Condon has engaged in motion practice, requested and provided substantial discovery, and assented to Court orders. *Hoxworth*, 980 F.2d at 925–26. Defendant has vigorously litigated this case at every stage, and consequently caused plaintiff, like the plaintiffs in *Hoxworth*, to "devote[ ] substantial amounts of time, effort, and money in prosecuting the action, while defendants were able to use the Federal Rules to conduct discovery not available in the arbitration forum." *Id.* at 926. *See Eagle Traffic Control, Inc.*, 945 F.Supp. at 835–36. Therefore, the Court concludes that defendant's conduct resulted in significant prejudice to plaintiff and warrants a finding of waiver of the right to arbitration.

Condon argues that plaintiff was not prejudiced by the discovery in this case because the NFLPA Regulations also provide for discovery. While § 5(E) of the Regulations state that "[t]he arbitrator may, at his/her discretion, order discovery in disputes between Contract Advisors

filed pursuant to § 5(A)(5)," this section, as explained above, does not apply to this case. Moreover, the discovery obtained in this case would not have been available in an arbitration proceeding pursuant to § 5(A)(4), the provision under which the Court concludes the dispute at issue could have been arbitrated upon a timely request. Thus, the Court concludes plaintiff would be prejudiced by proceeding to arbitration after having provided the extensive discovery completed in this case.

 Condon attempts to explain the sixteen-month delay by stating that he was unaware that plaintiff's allegations fell within the scope of the NFLPA's arbitration provisions until plaintiff elaborated on the allegations at his September 22, 2004 deposition. On this issue, defendant relies on the fact that at his deposition plaintiff testified that "some of the allegations [relating to whether Condon made his statements in the presence of two of the three athletes identified in the Complaint] were included in the complaint as the result of a miscommunication between him and his counsel."[5] Defendant also claims that plaintiff stated at his deposition for the first time that he was a certified Contract Advisor and mentioned the NFLPA Regulations. (Def. Mot. at 3). The Court finds this argument unpersuasive.

Plaintiff's Complaint avers that both he and Condon are Contract Advisors certified by the NFLPA and therefore subject to its Regulations. (Compl.¶¶ 5–8, 10–11). Plaintiff's Complaint also clearly alleges that defendant intentionally made false statements about plaintiff to prospective clients, which constitutes, "[p]roviding false and/or misleading information to any player or prospective player in the con-text of recruiting a player as a client" under § 3(B)(4), and is therefore arbitrable under § 5(A)(4). The fact that plaintiff testified later at his deposition that the Complaint contained some mistakes with regard to whether Condon made his alleged statements in the presence of two of the three identified athletes does not in any way excuse Condon's failure to request arbitration in a timely manner on the basis of the allegations in the Complaint.

## IV. CONCLUSION

The Court denies defendant Condon's Motion to Compel Arbitration and the Motion to Stay filed by IMG on the ground Condon waived his right to arbitrate by not timely requesting arbitration and actively litigating the case for sixteen months, resulting in prejudice to plaintiff.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 9th day of March 2005, upon consideration of the Motion to Compel Arbitration of Defendant, Thomas J. Condon and Motion to Stay of Defendant, IMG Worldwide, Inc. (Doc. No. 25, filed October 25, 2004), and Plaintiff's Opposition to Defendant Condon's Motion to Compel Arbitration (Doc. No. 26, filed November 12, 2004), for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that the Motion to Compel Arbitration of Defendant, Thomas J. Condon and Motion to Stay of Defendant, IMG Worldwide, Inc. are **DENIED.**

---

5. In his deposition, plaintiff testified that Condon made the statements at issue to Bryant's agent (who did not share the statements with his client), and not in the presence of Bryant as averred in the Complaint. (Def. Mot., Ex. 2, at 39). Additionally, plaintiff testified that he did not know who made similar statements to Johnson's father, although the Complaint states that Condon did so. (*Id.* at 53).