Dennis P. DUGGAN,
Plaintiff/Respondent,

v.

ZIP MAIL SERVICES, INC., et al., Defendants/Appellants.

No. 68636.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 23, 1996.

Alan G. Gerson, James M. Niemann, Blumenfeld, Kaplan & Sandweiss, St. Louis, for appellant.

Dean A. Hodapp, Fortus, Anderson & Rivera, Clayton, for respondent.

AHRENS, Presiding Judge.

Defendants Zip Mail Services, Inc. ("Zip Mail"), Bart Brown, and Timothy Brown appeal the trial court's denial of their motions to compel arbitration and stay litigation, arising out of an employment contract dispute with plaintiff, Dennis Duggan. We find the parties are required to arbitrate the dispute according to the terms of their agreement and reverse the trial court.

Defendant Zip Mail is in the "mail presort business" with facilities in Missouri, Illinois, and Michigan. Zip Mail picks up outgoing mail from its clients, sorts the mail according to U.S. Postal System regulations, and delivers the sorted mail to a designated post office where it is inspected and mailed. Zip Mail also sells and addresses envelopes for clients from its St. Louis office and performs other related services.

In August of 1990, plaintiff and Zip Mail entered into an employment agreement whereby plaintiff was hired as a sales representative for Zip Mail at its St. Louis office. The agreement contained an arbitration clause which provided as follows:

> *Arbitration of Disputes:* Any controversy, dispute, or claim arising out of, in connection with, or relating to this Agreement or its interpretation or performance, or the

breach thereof, shall be settled by arbitration conducted at a site selected by the Company, which site will be within a forty (40)–mile radius of the facility to which the Employee is then assigned, and in accordance with the rules of the American Arbitration Association, and any judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof. Such arbitration is in lieu of pursuing legal or equitable action in any state or federal court or agency and is the Employee's exclusive remedy. However, nothing herein contained shall in any way deprive the Company of its right to seek and obtain injunctive or other equitable relief from any court of competent jurisdiction with respect to the provisions of paragraphs 6, 7, and 8 of this Agreement.

Plaintiff was discharged by defendants in August of 1993. Plaintiff subsequently filed suit against defendants alleging breach of contract, defamation, misrepresentation, intentional interference with contract, and civil conspiracy arising out of his termination. Defendant Zip Mail responded to plaintiff's petition by moving to compel arbitration pursuant to the employment agreement and all defendants joined in an accompanying motion to stay litigation pending arbitration. Defendants appeal from the trial court's denial of both motions.

■ Pursuant to an order of this court dated August 3, 1995, both parties briefed the issue of whether the trial court's order denying defendants' motions to compel arbitration and stay litigation is appealable. As this issue affects the jurisdiction of this court, we will address it first. Both the United States Congress and the Missouri General Assembly have enacted arbitration legislation. *See* 9 U.S.C. § 1, et seq. (1970); § 435.350 et seq., RSMo, 1994.[1] The Federal Arbitration Act ("FAA") allows parties to appeal any order refusing a stay of litigation or any order denying a petition to order arbitration to proceed. 9 U.S.C. § 16(a)(1)(A) and (B) (Supp.1995). Although Missouri's Uniform Arbitration Act ("Mis-

souri Act") does not allow an appeal from an order refusing a stay of litigation, it does provide for appeal from an order denying an application to compel arbitration. § 435.440 RSMo. Thus, we conclude defendants have the right to appeal the trial court's decision under either act and may do so if either act applies to the circumstances of this case.

■ Having decided both acts provide for an appeal in this instance, we must now decide which act applies to the employment agreement. The FAA applies when a contract evidences a transaction "involving commerce." 9 U.S.C. § 2 (1970). The United States Supreme Court has determined Congress intended the FAA to reach the full expanse of its Commerce Clause power. *Allied–Bruce Terminix Companies, Inc. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 840, 130 L.Ed.2d 753, 764–65 (1995). The Supreme Court has also concluded the phrase "involving commerce" is the functional equivalent of "affecting commerce." *Id.* at ——, 115 S.Ct. at 839. The federal courts have interpreted the phrase broadly, applying the FAA in cases where the contract simply relates to interstate commerce even when the relationship was less than substantial. *Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145, 147 (5th Cir.1987); *See Woermann Construction Co. v. Southwestern Bell Telephone Co.*, 846 S.W.2d 790, 792 (Mo.App.1993). The federal courts have found interstate commerce involved in cases where the contracting parties resided in different states, the U.S. Postal System was used, employees crossed state lines, or materials were transported across state lines. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir.1986); *See Mr. Mudd, Inc. v. Petra Tech, Inc.*, 892 S.W.2d 389, 392 (Mo.App.1995). Plaintiff's contract with Zip Mail involved interstate commerce in that the mail which Zip Mail sorted crossed state lines, the U.S. Postal System was the final destination of mail presorted by Zip Mail, and plaintiff's position involved dealing with customers in Illinois, as well as Missouri.

---

1. All citations to the Revised Statutes of Missouri refer to the 1994 version unless otherwise denoted.

The Missouri Act applies to all written agreements to arbitrate except arbitration provisions in contracts of insurance or adhesion. § 435.350 RSMo. Thus, it appears the Missouri Act is also applicable to the parties' employment agreement. However, pursuant to § 435.460 RSMo, an agreement to arbitrate is not enforceable unless it contains the following statement adjacent to or above the signature lines: THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. *Hefele v. Catanzaro,* 727 S.W.2d 475, 476 (Mo.App.1987). The agreement at issue in this case did not contain the notice requirement of § 435.460.

■ Plaintiff argues the Missouri Act should be applied because: (1) the parties agreed Missouri law would govern the employment agreement; (2) the Missouri Act provides for appeal in this instance; and (3) application of the Missouri Act will not undermine the policies of the FAA. However, plaintiff's third contention ignores the instruction of our Missouri Supreme Court in a similar situation. *Bunge Corporation v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837 (Mo. banc 1985). Applying the Missouri Act to the parties' agreement would destroy the right to arbitrate because the employment agreement does not contain the required § 435.460 notice, and consequently the arbitration clause is unenforceable under the Missouri Act. The *Bunge* court also dealt with the issue of whether § 435.460 RSMo could be applied to preclude arbitration of a matter within the coverage of the FAA. *Id.* In *Bunge,* the court held the Supremacy Clause obliged the court to apply federal law and prohibited it from applying substantive or procedural state law which was in derogation of federal law. *Id.* at 839. The U.S. Supreme Court has likewise concluded the federal act preempts any state act when both are applicable. *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1, 15–16 (1984).

■ Our courts are not bound by the procedural provisions of the FAA and state procedural rules may be applied when arbitration is pursuant to the FAA. *Greenwood v. Sherfield,* 895 S.W.2d 169, 172 (Mo.App. 1995). However, state procedures may not be applied to defeat the substantive rights granted by the FAA; and more specifically, the § 435.460 notice requirement cannot be applied to circumvent an arbitration provision within the scope of the FAA. *Id.* at 172–73.

■ The Missouri Act imposes an additional burden on the party seeking arbitration over that which is required by the FAA, namely the notice requirement. *See* § 435.460 RSMo. Because of this added requirement, an arbitration agreement which is sufficient under the FAA would be unenforceable under the Missouri Act without the notice required by § 435.460. Applying the Missouri Act to defeat arbitration in instances where the FAA permits it would place the state act above the federal act, violating the Supremacy Clause of the Constitution.

> The Federal Arbitration Act was passed by Congress pursuant to its power to regulate interstate commerce. Any requirement of state law which adds a burden not imposed by Congress is in derogation of the Congressional power, and pro tanto invalid.

*Bunge,* 685 S.W.2d at 839. (citations omitted). Our Missouri Supreme Court has concluded the Missouri Act may not be used to defeat an arbitration provision of a contract which is covered by the FAA. *Id.* We find the FAA is applicable as the agreement at issue "involves commerce," and application of the Missouri Act is pre-empted by the FAA. *See Southland Corp.,* 465 U.S. at 15–16, 104 S.Ct. at 860–861. Further, we find the § 435.460 notice requirement to be invalid under the FAA. For these reasons we follow the decision in *Bunge,* and in so doing, apply the FAA. Based on the above reasons, we believe this court has jurisdiction to hear an appeal of this issue.

In their second point on appeal, defendants contend the trial court erred in denying defendant Zip Mail's motion to compel arbitration because the FAA applies to the parties' agreement to arbitrate and plaintiff is not entitled to exclusion from application of the FAA under 9 U.S.C. § 1. Defendants' third point makes a similar allegation of error as

to the trial court's denial of a motion by all defendants to stay litigation pending arbitration. Due to the similarities between the arguments made under both points, we will address them together.

Because we have decided the FAA is applicable, the only remaining issue to be resolved is whether plaintiff is excluded from application of the FAA under 9 U.S.C. § 1. That section provides, in part: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. At trial, plaintiff argued that his position with Zip Mail came within the exclusionary clause of section 1 of the FAA and consequently he was not required to arbitrate his dispute with defendants. After carefully reviewing federal case law on this issue, we disagree with plaintiff.

The FAA was originally enacted in 1925 with the purpose of reversing the "longstanding judicial hostility" toward arbitration agreements and placing those agreements on the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26, 36 (1991). The FAA evidences a liberal policy supporting arbitration agreements which the U.S. Supreme Court has interpreted as "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765, 785 (1983).

The report of the American Bar Association committee, which drafted section 1 of the FAA, suggests the exclusionary language was included in response to objections made by a representative of the Seamen's Union. *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America Local 437*, 207 F.2d 450, 452 (3rd Cir.1953). The Seamen's Union objected to the application of the FAA to their employment contracts because seamen were already required to arbitrate employment disputes under another federal statute. *Id.* and *see* 46 U.S.C. § 651 (1958) (repealed 1983). Likewise, railroad employees were also excluded because Congress had previously provided these workers with an alternative means of dispute resolution. *See* 45 U.S.C. § 157 (1986). The *Tenney* court noted that both seamen and railroad employees were workers directly engaged in interstate or foreign commerce. *Tenney*, 207 F.2d at 452. The court believed the final phrase, including "any other class of workers engaged in foreign or interstate commerce," was intended by the drafters to include only those other classes of workers who were similarly engaged directly in interstate commerce. *Id.* The Third Circuit explained that its interpretation of the phrase included "only those other classes of workers who are actually engaged in the *movement* of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Id.* (emphasis added).

Since *Tenney*, the First, Second and Seventh Circuits of the Federal Appeals Court have considered the same issue and made similar findings. *Dickstein v. DuPont*, 443 F.2d 783, 785 (1st Cir.1971) (exception limited to those involved in, or closely related to, the actual movement of goods in interstate commerce); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984) (section 1 is limited to employees in the transportation industries); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2nd Cir.1972) ("we see no reason to give an expansive interpretation to the exclusionary language of Section 1"). Moreover, since *Tenney* the Fourth Circuit is the only federal appellate court which has not construed the section 1 exclusion narrowly. *United Electrical, Radio & Machine Workers v. Miller Metal Products, Inc.*, 215 F.2d 221, 224 (4th Cir.1954). However, the Fourth Circuit limited its opinion to the applicability of the FAA to collective bargaining agreements, and therefore, it is not directly on point with the instant case. *Id.*

Our research has uncovered no Missouri cases on this issue and therefore, we are not bound by mandatory precedent. However, we find the reasoning of *Tenney*, and those courts which follow it, to be persuasive; especially when considered in conjunction with the underlying federal policy favoring arbitration.

Plaintiff contends he is excluded from the application of the FAA pursuant to section 1. In support of his argument, plaintiff cites a Sixth Circuit case in which the employee was a "parcel post distributor" employed by the U.S. Postal Service at a bulk mail center. *Bacashihua v. United States Postal Service*, 859 F.2d 402, 403 (6th Cir.1988). Plaintiff argues he is within the class of workers similar to the class known as "postal workers." Plaintiff discusses the similarities between the services provided by Zip Mail and those provided by the U.S. Postal Service. Plaintiff continues his argument, saying:

> [u]nder *Bacashihua* whether a postal worker drives a truck, sorts mail, provides customer service or is a "parcel post distributor," makes no difference: each are within the class of workers engaged in interstate commerce known as postal workers.

Plaintiff misinterprets the determination made by the Sixth Circuit, which found a parcel post distributor to be in a class of workers engaged in interstate commerce. *Id.* at 405. The Sixth Circuit found that "postal workers" are engaged in interstate commerce, without defining the scope of that term. *Id.* In particular, the court did not find everyone employed by the postal service is engaged in interstate commerce.

■ Plaintiff did not belong to any class of workers which was subject to special arbitration legislation when Congress enacted the FAA. *See Tenney* 207 F.2d at 452. Additionally, plaintiff was not directly involved in the transportation industry. Plaintiff stated that his job duties included picking up mail from customers in Illinois and Missouri. Plaintiff also occasionally sorted the mail and delivered it to the U.S. Post Office. However, plaintiff's position with Zip Mail was as a sales/customer representative. Although he was closely associated with those workers directly involved in the transportation industry, plaintiff was not likewise involved; and as a sales representative, plaintiff was not in the same class as those workers whose jobs were to transport the mail. If we extend the exclusionary language of section 1 to apply to plaintiff, every employee of a business which had some connection to the transportation of goods in interstate commerce would arguably be excluded from application of the FAA. Such a broad exclusion would undermine the federal policy favoring arbitration and would disregard the instruction of the U.S. Supreme Court that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941. Although plaintiff's connection to interstate commerce is fairly substantial, his relationship to the transportation industry and the actual movement of goods in interstate commerce is not sufficiently similar to that of seamen and railroad employees to bring him within the exclusion of section 1 of the FAA.

The trial court erred in denying defendant's motion to compel arbitration and defendants' motion to stay proceedings pending arbitration. We reverse and remand with instructions to grant the motions.

PUDLOWSKI and SIMON, JJ., concur.