Troy J. **LENZ**, Plaintiff,

v.

**YELLOW TRANSPORTATION, INC.**, Defendant.

No. 4:04–CV–00617.

United States District Court, S.D. Iowa, Central Division.

Jan. 19, 2005.

Troy A Skinner, Carney Appleby Nielsen & Skinner, Des Moines, IA, for Troy J Lenz, Plaintiff.

Frank B Harty, Nyemaster Goode West Hansell & O'Brien, PC, Des Moines, Robert W McKinley, Lathrop & Gage LC, Kansas City, MO, for Yellow Transportation, Inc., Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is Defendant's Motion for Order Compelling Arbitration and Dismissing, or Alternatively, Staying Action. Clerk's No. 4. Plaintiff, Troy J. Lenz ("Lenz"), a resident of Iowa, originally filed a Petition in Iowa State Court, alleging the Defendant, Yellow Transportation, Inc. ("Yellow"), violated his civil rights pursuant to the Iowa Civil Rights Act, Iowa Code, Chapter 216. Defendant, an Indiana corporation with its principal place of business in Kansas, removed the action, asserting federal diversity jurisdiction. 28 U.S.C. § 1332. On November 19, 2004, Defendant filed the present Motion to Compel Arbitration based on a Dispute Resolution Agreement ("DRA") between the parties. Plaintiff, a former employee of Defendant, responded to the motion stating the DRA is unenforceable under Iowa law. The Defendant filed a reply arguing the Iowa law is pre-empted by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1 et seq. The matter is fully submitted.

## I.  BACKGROUND

Defendant "is a transportation company serving primarily as a carrier of general commodities by truck." Def.'s Br. at 2. Defendant provides regional, national, and international transportation services. Plaintiff began employment with Defendant on July 14, 2003 as a Customer Service Representative.[1] The Custom-

---

1. Defendant states that Plaintiff's employment was terminated on September 19, 2003, while Plaintiff states his employment was terminated on October 16, 2003.

er Service Representative job summary, as provided by Defendant, is:

> Provide courteous, efficient, timely and informed service to customers calling a Yellow Freight Customer Service Center. Receive incoming telephone calls, answer questions and investigate customer problems. Provide the customer with an easily attainable source of information. Make decisions, as necessary, following the philosophy of "what is the right thing to do." Refer to others for answers as deemed appropriate.

Pl.'s Resistance, Ex. 2. The Yellow Customer Service Representative job description lists seven specific duties or tasks. The first listed duty is: "1. Coordinate freight flow by expediting movement of shipment and contacting terminals and/or central dispatch." Id. By affidavit, Plaintiff asserts that he handled, "approximately 250 calls per week and insured proper delivery of goods throughout the country." Clerk's No. 11.

While employed at Yellow, Plaintiff signed a DRA, agreeing to submit employment-related claims to arbitration. The DRA, in part, reads:

> Both Yellow and I agree to resolve all disputes, claims or controversies arising out of or related to, my application for employment, my employment, or the cessation of my employment with Yellow that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator.

Pl.'s Resistance. Ex. 1. Defendant argues that the DRA is enforceable under the FAA and, therefore, the present action must be submitted to arbitration. Plaintiff argues, however, that he is included in the FAA's exclusion clause because he is engaged in interstate commerce, and that the DRA is unenforceable under Iowa law. Defendant does not contest that the DRA

is unenforceable under Iowa law, but argues that, under federal law, the exclusion found in the FAA does not apply to "customer service representatives." The question before the Court, therefore, is whether a customer service representative at an interstate trucking business is included within the definition of a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

## II. ANALYSIS

The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements .... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Accordingly, there is a "strong federal policy favoring arbitration," such that the FAA "preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration." *Faber v. Menard, Inc.* 367 F.3d 1048, 1052 (8th Cir.2004). Arbitration clauses in the employment context are disfavored under Iowa law. Iowa Code, section 679A.1(2) provides protection for arbitration agreements, but excludes from protection, those agreements requiring arbitration between employers and employees. Further, the Iowa Supreme Court has held that "arbitration of civil rights violations is against public policy." *Polk County Secondary Rds. v. Iowa Civil Rights Comm'n*, 468 N.W.2d 811, 816 (Iowa 1991). As stated previously, Defendant does not dispute that the DRA is unenforceable under Iowa law. Instead, Defendant's argument is that the DRA is covered by the FAA, which preempts Iowa law.

"The FAA extends to most arbitration agreements covering employment disputes." *Faber*, 367 F.3d at 1052 (citing *Circuit City Stores, Inc. v. Adams*, 532

U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). Congress, however, specifically excluded certain employment contracts from the FAA: "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court held that this exclusion does not extend to all employment contracts affecting commerce. Rather, it encompasses "only contracts of employment of transportation workers." *Circuit City Stores, Inc.,* 532 U.S. at 119, 121 S.Ct. 1302. Thus, a sales counselor at Circuit City, a national retailer of consumer electronics, is not covered in the exclusion. *Id.* The Supreme Court reasoned, despite legislative history showing that the FAA was limited to only commercial contracts, that the residual exclusion must include only employees "similar to the categories of seamen and railroad employees." *Id.* Due to "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods .... It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation." *See id.* at 121, 121 S.Ct. 1302 (citing *Pryner v. Tractor Supply Co.,* 109 F.3d 354, 358 (7th Cir.1997) (Posner, C.J.)). Congress has utilized this reservation in the transportation industry by amending "the Railway Labor Act in 1936 to include air carriers and their employees." *Id.* (citing 45 U.S.C. §§ 181–188). Under this reasoning, the Congressional reservation would also extend to interstate trucking companies and their employees.

There is no question that interstate trucking, like railroads and air carriers, is a transportation industry. It follows that "[t]ruck drivers who deliver goods are therefore also exempted from the FAA by section 1." *Harden v. Roadway Package Sys.,* 249 F.3d 1137 (9th Cir.2001). There is no doubt that Yellow is in the transportation industry. Defendant's argument however, is that while some employees are "transportation workers," not all of Yellow's employees are "so closely related to interstate and foreign commerce as to be in practical effect part of it." *Tenney Eng'g, Inc. v. United Elec. Radio and Mach. Workers of Am., (U.E.) Local 437,* 207 F.2d 450 (3rd Cir.1953). In short, Defendant's argument is that a customer service representative is too far removed from the actual transportation of goods to be covered in the exclusion. While the Supreme Court stated clearly that "contracts of employment of transportation workers" are covered by the exclusion, they did not specify how to define a transportation worker. Thus the determinative question is whether the focus should be on the employer's industry, the specific duties of the employee, or both.

The Eighth Circuit has not definitively ruled on this issue, but has indicated that an important factor to consider is whether the employer is in the transportation industry. *See Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.,* 380 F.3d 1084, 1097 (8th Cir.2004) ("Circuit City ... involved the question of whether the FAA authorized a district court to compel arbitration under the arbitration clause in an employment contract between one non-transportation industry employee and a corporate retail employer."). The D.C. Circuit has found that when the employer is a security company, the employee is not excluded from the provisions of the FAA, despite his or her location. *Cole v. Burns Int'l Sec. Services,* 105 F.3d 1465, 1471 (D.C.Cir.1997) (security guard at a train station not covered in the exclusion). Also, one district court has found that warehouse workers at a manufacturing company who load and unload trucks are not covered by the exclusion. *Kropfelder*

*v. Snap–On Tools Corp.*, 859 F.Supp. 952 (D.Md.1994).

■ The situation changes, however, when the employer is in the transportation industry. *See Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir.2002) (finding loadmasters at air carriers to be "integral to the transportation of cargo" and therefore covered under the Railway Labor Act and exempt from the Fair Labor Standards Act) (citing *Northwest Airlines v. Jackson*, 185 F.2d 74 (8th Cir. 1950)). The reason for this distinction is explained as follows:

> In adopting the Railway Labor Act, Congress endeavored to bring about stable relationships between labor and management in this most important national industry. In other words, the purpose of the restrictive provisions of the Railway Labor Act is to keep transportation moving. It therefore follows that an employee whose work is not directly related to the air transportation activities of his employer perform work of a nature other than that which characterizes the exemption. Conversely, an employee whose duties are directly related to air transportation performs work that qualifies for coverage under the Railway Labor Act. In short, the applicability of the § 13(b)(3) exemption depends on both the nature of the employee's duties and the nature of the employer's business . . . .

*Thibodeaux v. Executive Jet Int'l, Inc.*, 328 F.3d 742 (5th Cir.2003) (finding the defendant to be a "common carrier by air" subject to the Railway Labor Act and its flight attendants exempt from the overtime requirements of the Fair Labor Standards Act because their duties were directly related to air transportation) (internal citations omitted). Similarly, the application of the FAA exemption depends on both "the nature of the employee's duties and the nature of the employer's business."

Two recent cases discussed the section 1 exemption at package transportation companies. The United States District of Kansas found that a "Safety Compliance Assistant" at a transportation company was "not a transportation worker for purposes of section 1 of the FAA." *Lorntzen v. Swift Transp., Inc.*, 316 F.Supp.2d 1093, 1097 (D.Kan.2004). In contrast, the Third Circuit found that a "Field Services Supervisor" at a package transportation and delivery company was a transportation worker for purposes of section 1 of the FAA. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3rd Cir.2004). "Each court that has determined an employee's classification for purposes of section 1 has reached its conclusion after a case-by-case, factual determination." *Lorntzen*, 316 F.Supp.2d at 1097. Therefore, the Court must look closely at the facts of this case, and the Plaintiff's specific job duties and responsibilities, to determine if Plaintiff is a transportation worker for purposes of section 1 of the FAA.

In the Kansas case, the plaintiff was not a truck driver, but worked with truck drivers and in a transportation industry. In her position as a "Safety Compliance Assistant," "it was her responsibility to ensure that all the necessary paperwork was completed and collected on the 'Driver File Checklist,' and that the paperwork was maintained in a folder for each driver." *Id.* The plaintiff also contended that she provided orientation and training to new drivers. However, unlike the present Plaintiff, all of her duties occurred either before or after the shipment of the goods. Here, Lenz's duties at Yellow occurred, in large part, while the shipments were in transit. In addition, as a Customer Service Representative, he was directed to "coordinate freight flow by expediting

movement of shipments and contacting terminals and/or central dispatch." Pl.'s Resistance, Ex. 2. An expeditor is defined as: "One employed to attend to the shipping of products on schedule." Webster's Third New Int'l Dictionary 799 (1961). Lenz also had the authority to "make decisions, as necessary, following the philosophy of 'what is the right thing to do.'" Pl.'s Resistance, Ex. 2. Therefore, his decisions had a direct affect on the schedule and movement of the goods themselves, and falls more closely to the "Field Services Supervisor" situation discussed in the Third Circuit.

In *Palcko*, the Third Circuit upheld a district court's denial of a motion to compel arbitration. In that case, the defendant employer was Airborne Express, Inc., "a package transportation and delivery company that engages in intrastate, interstate, and international shipping." *Palcko*, 372 F.3d at 590. The plaintiff employee was not a truck driver, but a "Field Services Supervisor," who supervised between thirty and thirty-five drivers. "Palcko monitored and improved the performance of the drivers under her supervision to ensure timely and efficient delivery of packages." *Id.* In *Palcko*, the defendant challenged the denial of the motion to compel arbitration because the plaintiff was only a "management employee." *Id.* at 593–94. Similarly, Yellow draws emphasis to the fact that Plaintiff is "a customer service representative—*not* a truck driver." Def.'s Reply at 3. The Third Circuit rejected such a distinction: "If we were to accept that limitation, we would unnecessarily narrow the section 1 exemption in a way never intended by the FAA." *Id.* The real question is whether the employee is engaged in the interstate transport itself such that the employee has a direct affect on the channels of interstate commerce. This question must be answered in the affirmative in the present situation. First, the Defendant is in the transportation industry. Second, Plaintiff's duties were such that he was a transportation worker, i.e., in his position he was directly engaged in interstate transportation.

Defendant urges the Court to follow a Missouri Court of Appeals case, *Duggan v. Zip Mail Serv., Inc.*, 920 S.W.2d 200 (Mo. Ct.App.1996). In that case, a sales representative for a mail pre-sort business was found to be "not in the same class as those workers whose jobs were to transport the mail." *Duggan*, 920 S.W.2d at 205. Notwithstanding the fact that *Duggan* is from a state appellate court, there are key factual distinctions between that case and the one presently before the Court. First, in *Duggan*, the defendant was a pre-sort mail business not directly involved in actual transportation. "Zip Mail picks up outgoing mail from its clients, sorts the mail according to U.S. Postal System regulations and delivers the sorted mail to a designated post office where it is inspected and mailed." *Id.* at 201. In this case, Yellow's business is the actual movement of the goods. Second, in *Duggan*, the plaintiff's position was that of a sales representative—the sale of contracts as opposed to the movement of commerce. The bulk of Lenz's duties, in contrast, occurred during the actual transportation of the goods. Lenz fielded approximately 250 calls per week from customers regarding their shipment orders. Lenz's work was "so closely related [to interstate commerce] as to be in practical effect part of it." *Tenney*, 207 F.2d at 452. Finally, *Duggan* was decided prior to the Supreme Court's decision in *Circuit City* that extended the FAA exclusion to "contracts of employment of transportation workers." *Circuit City Stores, Inc.*, 532 U.S. at 119, 121 S.Ct. 1302.

Defendant next provides this Court with two United States District Court cases where Yellow's DRA was upheld. *Gratzer*

*v. Yellow Corp.,* 316 F.Supp.2d 1099 (D. Kan. 2004); *Marlar v. Yellow Transp., Inc.,* No. 03–1042–HFS (W.D.Mo. Nov. 29, 2004). In neither case, however, did the plaintiff argue that the exclusion in section 1 of the FAA applied to them. Further, in *Marlar,* the plaintiff was an "Area Account Executive," and the decision gives little description of what duties that position entailed. Similarly, it is unclear what the plaintiff's employment was in *Gratzer.* Therefore, those cases are unpersuasive.

## III. CONCLUSION

Despite the strong federal policy favoring arbitration, it is clear from the pleadings and Plaintiff's job description and duties that he is a transportation worker and is, therefore, included in the section 1 exclusion of the FAA. Defendant is in the transportation industry and Plaintiff's duties directly affect the actual movement of interstate commerce. Since Plaintiff is included in the FAA section 1 exclusion, Iowa's laws disfavoring arbitration in the employment context are not pre-empted. Thus, under Iowa law, the DRA as it applies to Plaintiff's civil rights claims is unenforceable, and Defendant's Motion to Compel Arbitration (Clerk's No. 4) is DENIED.

IT IS SO ORDERED.