

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| HAMPTON S. BROWN, ET AL., | ) | No. ED110645 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable John N. Borbonus |
| GOJET AIRLINES, LLC, | ) | |
| | ) | |
| Appellant. | ) | Filed: December 20, 2022 |

### Introduction

GoJet Airlines, LLC ("Appellant") appeals the judgment of the 21st Judicial Circuit denying its motion to compel arbitration in a breach of contract action filed by Hampton S. Brown ("Respondent"). Appellant raises two points on appeal. In Point I, Appellant argues the trial court erred in considering and ruling on Respondent's challenges to the arbitration agreement because it includes a delegation provision directing an arbitrator to determine threshold questions of arbitrability. In Point II, Appellant argues the trial court erred in denying its motion to compel arbitration because no statutory notice provision was required.

Because the parties agreed the arbitration agreement would be interpreted and enforced pursuant to the Federal Arbitration Act ("FAA") and § 1 of the FAA exempts its application to Respondent the arbitration agreement is not enforceable. The trial court did not err in denying

Appellant's motion to compel arbitration. We deny Points I & II and affirm the judgment of the trial court.

## Factual and Procedural Background

Appellant is a limited liability company organized in Delaware with headquarters in Bridgeton, Missouri. Respondent is a resident of Austria. In November 2019, Respondent applied online to work for Appellant. The application included an arbitration agreement providing the parties agreed to arbitrate "any and all claims, disputes, or controversies" related to Respondent's employment. Appellant hired Respondent as a pilot on January 21, 2020. On that date, the parties entered a bonus agreement providing Respondent would be paid bonuses tied to the duration of his employment. Respondent would be paid $46,000 in bonuses during his first year, including: $10,000 after successful completion of training; $10,000 after six months of employment; and $26,000 after one year of employment. The agreement also provided for bonuses in Respondent's second and third year. Respondent was terminated on April 15, 2021.

On November 17, 2021, Respondent filed a petition for class action relief alleging Appellant breached the bonus agreement by failing to issue bonuses he and other employees qualified for. Appellant moved to compel arbitration and stay proceedings under section 435.355,[1] arguing the parties entered "a mutually binding and enforceable arbitration agreement that requires them to arbitrate this dispute." Respondent argued the trial court could not compel arbitration because the Federal Arbitration Act exempts workers engaged in interstate commerce and the arbitration agreement did not include the statutory notice provision required by section 435.460. Appellant filed a reply motion arguing "the parties clearly and unmistakably intended to delegate the threshold issue of arbitrability to an arbitrator." Appellant quoted the arbitration agreement, which provides the arbitrator, and not any court, "shall have exclusive authority to

[1] All statutory citations are to RSMo (2000), unless otherwise indicated.

resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement[.]" Appellant argued the statutory notice provision was not required because the arbitration agreement was a standalone agreement.

On May 27, 2022, the trial court denied Appellant's motion to compel arbitration because the arbitration agreement did not include the notice of an arbitration provision required by section 435.460. This appeal follows.

**Standard of Review**

Whether a motion to compel arbitration should have been granted is a question of law we review *de novo*. *St. Louis Reg'l Convention v. Nat'l Football League*, 581 S.W.3d 608, 613 (Mo. App. E.D. 2019) (citing *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. banc 2005)). Our review of a trial court's interpretation of an arbitration provision is also *de novo*. *Hughes v. Ancestry.com*, 580 S.W.3d 42, 46–47 (Mo. App. W.D. 2019) (citing *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 463 (Mo. App. W.D. 2018)). When we conduct a *de novo* review, "the judgment may be affirmed on an entirely different basis than that presented to the trial court" and "can be affirmed on any theory that is supported by the record." *Belton Chopper 58, LLC v. N. Cass Dev., LLC*, 496 S.W.3d 529, 532 (Mo. App. W.D. 2016) (quoting *Hensley-O'Neal v. Metro. Nat'l Bank*, 297 S.W.3d 610, 614 (Mo. App. S.D. 2009)).

**Discussion**

*Point I: The Delegation Provision*

Appellant argues the trial court lacked authority to determine the validity of the parties' arbitration agreement because the agreement contained a delegation provision reserving the consideration of its validity and enforceability to an arbitrator. Appellant references the arbitration agreement, which provides:

Authority of the Arbitrator. Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement . . . .

Appellant argues we are bound to enforce delegation provisions, "i.e., contractual language that gives an arbitrator exclusive authority to determine any threshold issues, including the validity or enforceability of the arbitration agreement – and cannot consider and rule on these issues themselves." *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Appellant notes the Missouri Supreme Court has enforced delegation provisions. *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 52 (Mo. banc 2017), *abrogated on other grounds by Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432 (Mo. banc 2020). Appellant argues it submitted sufficient evidence of the agreement under 28 U.S.C. § 1746.

Appellant argues, in addition to the delegation provision in the parties' arbitration agreement, "another delegation clause is contained in the referenced Employment Arbitration Rules of the American Arbitration Association." Appellant argues the parties incorporated these rules into their agreement, "unequivocally demonstrat[ing] an intent to arbitrate the threshold issue of arbitrability." Appellant argues incorporating these rules into an arbitration agreement means issues of contract formation must be decided by the arbitrator, not a court. *Pinkerton*, 531 S.W.3d at 52.

Appellant contends it "has never argued" the arbitration agreement is enforceable under the FAA. Instead, Appellant argues the agreement is enforceable under state law because "all contracts must be governed by law," and Missouri law applies under conflict of law rules because its business is in Missouri and Missouri has the most significant relationship to the

4

arbitration agreement. *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 872 (Mo. App. W.D. 2002). Appellant notes the Missouri Uniform Arbitration Act governs where it is "not preempted by the FAA." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015). Appellant argues Respondent cannot claim on appeal the Missouri Uniform Arbitration Act does not govern because he did not present this claim to the trial court. *GP&W Inc. v. Daibes Oil, LLC*, 497 S.W.3d 866, 870 (Mo. App. E.D. 2016).

Respondent argues Appellant did not submit competent evidence of an arbitration agreement because the agreement was not supported by a sworn declaration. *Brown v. Chipotle Servs.*, 645 S.W.3d 518, 521 (Mo. App. W.D. 2022). Respondent argues he has not waived this contention because respondents can raise new arguments on appeal. *Id*. at 526–27. Respondent argues, even assuming the arbitration agreement was properly in evidence, it provides it is subject to the FAA, which by its terms does not apply to workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. Respondent cites the arbitration agreement, which provides "the parties are subject to the Federal Arbitration Act ('FAA') and [] this Agreement shall be enforceable pursuant to and interpreted in accordance with the FAA." Respondent argues parties may choose whether their agreement to arbitrate will be governed by the FAA or state law. *Volt Info. Scis. v. Bd. of Trs. of Stanford Univ.*, 489 U.S. 468, 472 (1989). Respondent argues the parties' arbitration agreement provided it was governed by the FAA and "[n]othing in the entire job application package completed online by [Respondent], of which the arbitration document was a part, refers to Missouri law."

Even if Missouri law applies, Respondent argues the trial court had no authority to compel arbitration because the Missouri Uniform Arbitration Act only gives courts the authority to compel arbitration where the parties' agreement provides arbitration will be held in Missouri.

*Teltech, Inc. v. Teltech Commc'ns, Inc.*, 115 S.W.3d 441, 442–43 (Mo. App. W.D. 2003). Respondent argues this arbitration agreement is not enforceable because it merely provides for arbitration "in or near the city in which you are or were last employed by, or applied for employment with, the Company, as applicable." Respondent argues he is from Austria, he submitted his application from Austria, and the record is silent on where Respondent was last employed, so Appellant has failed to demonstrate Missouri arbitration law applies.

Respondent argues courts must determine whether there is an enforceable arbitration agreement before considering the effectiveness of a delegation provision. *Theroff*, 591 S.W.3d at 440. Because Respondent is exempt from the FAA and the Missouri Act is inapplicable, Respondent argues the trial court properly declined to enforce the delegation provision. Respondent argues *Theroff* requires courts "determine if the contract in question falls within the coverage of the arbitration act before applying the act's severability principle, requiring a challenge to an arbitration agreement, or delegation provision, separate from a challenge to the overall contract." 591 S.W.3d at 440.

## Analysis

Appellant contends the trial court erred in denying its motion to compel arbitration because the trial court was required to enforce the parties' delegation provision reserving to an arbitrator gateway questions of arbitrability. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. Questions of arbitrability include whether the parties are bound by an arbitration agreement and disputes over formation, enforceability, and applicability to the dispute at issue. *Car Credit, Inc.*, 643 S.W.3d 366, 371 (Mo. banc 2022) (citing *Pinkerton*, 531 S.W.3d at 43). Appellant correctly notes delegation provisions, even those included by incorporation, are valid and enforceable. *Pinkerton*, 531 S.W.3d at 52. Appellant also argues the parties' arbitration agreement

6

incorporates the Employment Arbitration Rules of the American Arbitration Association, which provide "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Appellant argues the FAA is inapplicable because it has only argued the parties' arbitration agreement is enforceable under state law.[2]

We first consider what the parties agreed to. Arbitration agreements are placed "on an equal footing with other contracts, and courts will examine arbitration agreements in the same light as they would examine any contractual agreement." *Pinkerton*, 531 S.W.3d at 48 (quoting *Triarch Indus., Inc.*, 158 S.W.3d at 776). We interpret contracts according to the parties' intent as expressed in the plain and ordinary meaning of the contract's terms. *Id.* at 44 (citing *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013)). We determine the intent of the parties and the contract's clear meaning solely from the four corners of the contract itself. *Patterson v. Rough Rd. Rescue, Inc.*, 529 S.W.3d 887, 893–94 (Mo. App. E.D. 2017) (citing *Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255-56 (Mo. App. E.D. 2000)). To the extent an arbitration agreement is ambiguous, we construe it against the drafter. *Triarch Indus., Inc.*, 158 S.W.3d at 776. "Sophisticated parties have freedom of contract—even to make a bad bargain, or to relinquish fundamental rights." *Pinkerton*, 531 S.W.3d at 47 (quoting *Purcell Tire & Rubber Co., Inc. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. banc 2001)).

The arbitration agreement provides "the parties are subject to the [FAA]" and the agreement "**shall** be **enforceable** pursuant to and **interpreted** in accordance with the FAA." Emphasis added. The agreement provides the arbitrator can apply state law to the issues in

---

[2] At oral argument, Appellant argued for the first time on appeal the parties' agreement to interpret and enforce arbitration under the FAA "was illegal" and the agreement contains a severability clause providing any provisions conflicting with applicable law should be excised without rendering the remainder of the agreement unenforceable. We do not address this argument because issues raised for the first time at oral argument are waived. *Knight v. Con-Agra Foods, Inc.*, 476 S.W.3d 355, 359 n.3 (Mo. App. W.D. 2015).

dispute, but does not provide the arbitration agreement itself is enforceable under state law. Therefore, the FAA governs because the parties agreed it would govern. Because the arbitration agreement concerns interstate commerce, the FAA also applies under its own terms. *Duggan v. Zip Mail Servs., Inc*., 920 S.W.2d 200, 202 (Mo. App. E.D. 1996) (citing 9 U.S.C. § 2). Appellant agreed at oral argument the FAA language in the agreement was unambiguous and stated the parties' intent was the FAA should apply to their arbitration agreement.

Section 1 of the FAA provides "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This is an exemption from the FAA's coverage. *New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 538 (2019) (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)). Workers engaged in interstate commerce include those "actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Duggan*, 920 S.W.2d at 204 (citing *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437*, 207 F.2d 450, 452 (3d Cir. 1953)). These workers' "relationship to the transportation industry and the actual movement of goods in interstate commerce" should be "sufficiently similar to that of seamen and railroad employees." *Duggan*, 920 S.W.2d at 205. Even airline workers who merely load and unload cargo meet this standard*. Sw. Airlines Co. v. Saxon*, 142 S.Ct. 1783, 1789 (2022). At oral argument Appellant conceded Respondent, as a pilot, is exempt from the FAA because he is a worker engaged in interstate commerce.

Because the FAA governs the arbitration agreement, Appellant's reliance on the delegation provision "overlooks the necessarily antecedent statutory inquiry" required of courts considering arbitration agreements under the FAA. *New Prime Inc.*, 139 S.Ct. at 538. A trial

8

court must determine as a threshold matter whether an arbitration agreement is enforceable. *Theroff*, 591 S.W.3d at 440 (citing *New Prime Inc.*, 139 S.Ct. at 537). Before determining arbitration issues, the court must determine if "the contract in question is within the coverage of the Arbitration Act." *Id.* at 439 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)). A court "should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime Inc.*, 139 S.Ct. at 537.

Here, the § 1 exclusion applies. Respondent is exempt from the FAA. Therefore, Appellant must demonstrate the arbitration agreement is enforceable under some other body of law. Appellant urges the delegation clause should have been enforced under the Missouri Uniform Arbitration Act, but cites no provision of the parties' agreement providing for state law enforceability. Appellant's contentions "all contracts must be governed by law" and Respondent "cannot have it both ways" misunderstand the parties' agreement to be governed by the FAA. Appellant conflates the *application of* the FAA with *coverage under* the FAA. If Appellant wanted to compel Respondent to arbitrate, it could have provided for state law governance in their contract.[3] *See Teltech, Inc.*, 115 S.W.3d at 445 ("Since the parties clearly expressed their agreement to apply Kansas law, the FAA does not preempt state law in this case."). We generally enforce choice of law provisions. *Grp. Health Plan, Inc. v. BJC Health Sys., Inc.*, 30 S.W.3d 198, 203 n.2 (Mo. App. E.D. 2000). In essence Appellant is asking us to rewrite the contract it wrote and presented to Respondent for their agreement. That we cannot do. *Lehmann v. Bank of Am., N.A.*, 427 S.W.3d 315, 322 (Mo. App. E.D. 2014) (citing *Grantham v. Rockhurst Univ.*, 563

---

[3] Respondent points out arbitration agreements invoking the FAA can include "fallback provisions" to avoid Appellant's problem. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590 (3d Cir. 2004) (enforcing an arbitration agreement which provided: "Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply.").

S.W.2d 147, 150 (Mo. App. W.D. 1978)). We note the U.S. Supreme Court did not rewrite the arbitration contract before it when confronted with a plaintiff exempt from the FAA. *Sw. Airlines Co.*, 142 S.Ct. at 1793.

The parties' arbitration agreement provides it is governed by the FAA. In contending "when the FAA does not apply to an arbitration agreement, Missouri's Uniform Arbitration Act applies," Appellant misstates *Eaton*. 461 S.W.3d at 431. That case held the Missouri Uniform Arbitration Act "governs those Missouri arbitration matters *not preempted by the FAA.*" *Id.* (emphasis added). Appellant presents no argument how, or why, application of the Missouri Uniform Arbitration Act is not preempted by the FAA's exemption of workers such as Respondent.

Because the parties' arbitration agreement provides "the parties are subject to the Federal Arbitration Act" and the agreement "shall be enforceable pursuant to and interpreted in accordance with the FAA," we are unpersuaded by Appellant's bare contention the Missouri Uniform Arbitration Act nevertheless applies because "all contracts must be governed by law." Appellant makes this conclusory claim without explaining how it is true. Appellant agreed at oral argument the arbitration agreement does not provide it should be governed by state law. Appellant also conceded at oral argument it has no legal citation for its position the FAA simply does not apply to situations carved out in § 1. In its conclusory argument we should follow choice of law principles to apply Missouri law, Appellant does not explain how the arbitration agreement "did not have an effective choice of law provision." The agreement provides for interpretation and enforcement under the FAA. This is a choice of law provision. *See Teltech, Inc.*, 115 S.W.3d at 445 (referring to an arbitration agreement's statement it would be governed by Kansas law, not the FAA, as a "choice-of-law provision").

10

For us to fashion a complete argument for Appellant as to how the Missouri Uniform Arbitration Act applies here would impermissibly have us become its advocate. *Finnical v. Finnical*, 81 S.W.3d 554, 560 (Mo. App. W.D. 2002) (citing *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 125 (Mo. App. W.D. 2001)). If a party does not support its contentions with relevant authority or argument beyond conclusory statements, its position is abandoned. *Unifund CCR Partners v. Myers*, 563 S.W.3d 740, 742–43 (Mo. App. E.D. 2018) (citing *Houston v. Weisman*, 197 S.W.3d 204, 206 (Mo. App. E.D. 2006)).

Therefore, assuming, without deciding, the parties' arbitration agreement was properly in evidence before the trial court, it is not enforceable. Because the plain language of the parties' arbitration agreement provides the FAA controls and Respondent is exempt from the FAA under § 1, the trial court did not err in declining to compel arbitration. We will affirm the trial court's judgment on any theory supported by the record. *Belton Chopper 58, LLC*, 496 S.W.3d at 532.

Point I is denied.

*Point II: Merits*

In Point II Appellant argues, assuming the trial court could consider the validity and enforceability of the arbitration agreement, the trial court erred in finding the arbitration agreement was unenforceable due to its failure to provide a statutory notice provision required by section 435.460. Appellant argues the trial court should have first determined whether a valid arbitration provision exists and whether this dispute falls within its substantive scope. *Kagan v. Master Home Prods. Ltd*., 193 S.W.3d 401, 405 (Mo. App. E.D. 2006). Appellant argues the notice provision is not required in this arbitration agreement because the statute applies only to agreements which *contain* an arbitration agreement. Here, Appellant argues the agreement does not contain an arbitration agreement because it is a standalone arbitration agreement. Therefore,

11

Appellant contends there is no need for a notice provision and including "such a provision in an agreement to arbitrate would serve no rational purpose." *State ex rel. Tri-City Const. Co. v. Marsh*, 668 S.W.2d 148, 153 (Mo. App. W.D. 1984).

Respondent argues the trial court did not err in denying Appellant's motion to compel arbitration because the parties' alleged arbitration agreement violates the requirement of section 435.460 that certain arbitration agreements include the statement "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Respondent argues we will not enforce covered arbitration agreements without this warning. *Hefele v. Catanzaro*, 727 S.W.2d 475, 477 (Mo. App. E.D. 1987). Incorporating its argument under Point I, Respondent argues Appellant cannot prove the arbitration agreement is a standalone agreement because there is no competent evidence of the agreement in the record. Respondent argues the notice requirement applies because the bonus agreement giving rise to his suit is separate from the arbitration agreement. Respondent urges *Tri-City Construction Company* was wrongly decided in carving out standalone arbitration agreements from the statutory notice requirement. 668 S.W.2d 148.

As discussed in Point I, there is no enforceable arbitration agreement. We need not address Point II on its merits.

Point II is denied.

## Conclusion

Because the arbitration agreement is not enforceable, the trial court did not err in denying Appellant's motion to compel arbitration.

We affirm.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

13